Michael J. Grobaty (Bar No. 126140)
MURTAUGH TREGLIA STERN & DEILY LLP
2603 Main Street, Penthouse
Irvine, California 92614-6232
(949) 794-4000/FAX (949) 794-4099
mgrobaty@murtaughlaw.com

Attorneys for Plaintiff
CHRISTOPHER LISNER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| CHRISTOPHER LISNER, an individual, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF HUNTINGTON PARK, a municipality incorporated by the State of California; COSME LOZANO and DOES 1 through 10, inclusive, <br><br> Defendant. | CASE NO. <br><br> **COMPLAINT FOR DAMAGES FOR VIOLATION OF UNITED STATES CONSTITUTION—AMENDMENTS I AND XIV—RETALIATION FOR FREEDOM OF SPEECH AND FREEDOM OF ASSOCIATION ACTIVITIES (42 U.S.C. § 1983)** <br><br> **DEMAND FOR JURY TRIAL** |
| --- | --- |

COMES NOW Plaintiff CHRISTOPHER LISNER to complain against Defendants CITY OF HUNTINGTON PARK; COSME LOZANO and Does 1 through 10, inclusive, upon knowledge as to himself and upon information and belief as to all other matters, as follows:

## I.

## PARTIES

1.    This is an action for damages suffered by Plaintiff Christopher Lisner ("Lisner") as the result of the Defendants' wrongful retaliatory termination of Lisner's employment as a result of the lawful exercise of his individual civil rights and liberties of free expression and association. As a result

2245531

- 1 -

1  of Lisner's speech, which was protected under the First Amendment of the

2  United States Constitution, and also as a result of his association and union

3  activities with the Huntington Park Police Officers Association, which were also

4  protected under the First Amendment, Lisner was wrongfully terminated by the

5  Defendants from his employment as a police sergeant with the City of

6  Huntington Park.

7       2.      Lisner is, and at all relevant times herein was, a resident of the

8  County of San Bernardino and employed by the City of Huntington Park until his

9  termination of employment on January 8, 2018.

10      3.      The Defendant City of Huntington Park ("the City") is a

11 government entity/municipality within the County of Los Angeles, State of

12 California and is responsible for the administration, operation and control of the

13 City of Huntington Park Police Department.

14      4.      Defendant Cosme Lozano ("Lozano") is an individual who is, at all

15 relevant times herein was, the Chief of the Huntington Park Police Department.

16 In doing the things alleged herein, Lozano acted under color of state law, within

17 the course and scope of employment, and as an official policy-maker for the

18 City.  As the highest-ranking person in the Police Department, Lozano is vested

19 with policymaking authority over department actions, including the ones alleged

20 and at issue in this complaint.

21      5.      Defendants, and each of them, were agents, servants and/or

22 employees, representatives, promoters, directors, officers, instruments and/or

23 alter egos, and/or entities unified in interest and ownership of the other

24 Defendants, and each of them, and in doing the things herein alleged, each

25 Defendant was acting within the course and scope of his/her/their representation,

26 direction, officiating, interest, employment, authority, agency and promotion of

27 all other Defendants and with the permission, ratification and consent of all other

28 Defendants.

MURTAUGH TREGLIA STERN &
DEILY LLP

2245531

COMPLAINT

6.      Plaintiff is ignorant of the true names and capacities of the defendants sued herein as DOES 1 through 10, inclusive, and therefore sues said defendants by such fictitious names.  Plaintiff will amend the complaint to allege the true names and capacities of DOES 1 through 10 when their identities have been ascertained.  Plaintiff is informed and believes, and based thereon alleges, that each of the fictitiously named defendants are in some way responsible for the wrongful acts, omissions and occurrences as herein alleged.

## II.

## JURISDICTION AND VENUE

7.      The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331, as this action arises under the First and Fourteenth Amendments to the United States Constitution; under 28 U.S.C. § 1343(a)(3), in that Lisner seeks redress for deprivations made under color of state law rights, privileges, and immunities secured by the United States Constitution; under 28 U.S.C. § 1343(a)(4), in that Lisner seeks damages under 42 U.S.C. § 1983, which provides a cause of action for the protection of civil rights; and under 42 U.S.C. § 1988(b) for an award of attorneys' fees.

8.      Venue is proper in the United States District Court for the Central District of California under 28 U.S.C. § 1391(b), because the events giving rise to the claims described in this Complaint occurred within the County of Los Angeles, State of California.

## III.

## GENERAL ALLEGATIONS

9.      In or about 1995, Plaintiff Lisner was hired by the Defendant City of Huntington Park as a sworn peace officer.  The position was a job within the City's police department.  After his employment commenced, Lisner continuously worked for the City until his termination on January 8, 2018.

MURTAUGH TREGLIA STERN &
DILEY LLP

2245531

- 3 -

COMPLAINT

1        10.    From the time his employment commenced through the date of his

2  termination, Plaintiff Lisner served the City with distinction, honor, and bravery

3  which is reflected by the promotions, honors, and commendations he received

4  throughout his tenure of employment.  After his hiring by the City in 1995,

5  Lisner began his employment as a patrol officer.  Due to his outstanding job

6  performance and service to the City in his capacity as a patrol officer, Lisner

7  thereafter received coveted special assignments to the City's detective unit, gang

8  unit, and the Special Emergency Response Team (SERT).  On April 28, 2008,

9  due to his outstanding job performance and excellent testing results, Lisner was

10  promoted to the rank of Sergeant within the City's police department.  From

11  2008 until his unlawful termination, Lisner served his role as Sergeant with

12  distinction.  During his tenure as Sergeant, Lisner undertook leadership roles in

13  various areas of the City's police department.  For example, Lisner took charge

14  and leadership of the City's Explorer program, was placed in charge as Jail

15  Supervisor for the City jail since 2008, was an ASP instructor since 2008, and

16  served as President of the Huntington Park Officer's Association for over a

17  decade.

18        11.    In addition to the outstanding service and job performance described

19  above, during his employment with the City, Lisner also received numerous

20  commendations for his outstanding police work, had a twenty-two year record of

21  perfect attendance, donated "sick days" to people in need, and received the City's

22  highest honor, i.e., the Medal of Valor for his bravery in connection with an

23  April 15, 2016 shooting incident that occurred during a homicide investigation.

24        12.    After over a decade of service as the President of the Huntington

25  Park Police Officer's Association (POA), Plaintiff Lisner was once again elected

26  to the POA board as a Trustee on or about June 6, 2016.  On June 9, 2016, in his

27  capacity as a POA Trustee and private citizen, Lisner sent an email to POA

28  members discussing the unfortunate recent exodus of sworn peace officers at the

Huntington Park police department.  Since Chief Lozano had been named Chief of Police at the City, over 10% of the City's officers had left their employment for other agencies.  Three days after Lisner sent this email, Lozano sent an email addressing the staffing concerns raised in Lisner's email using precise language pulled from Lisner's email.

13.     On or about July 5, 2016, as POA Trustee and private citizen, Lisner attended a POA meeting.  During the meeting, Lisner advised the POA membership of disturbing comments Lozano had made to the effect that as Chief of Police, "the Community can hate you, the Officers can hate you, but if the council supports you, you'll always have a job."  In this same POA meeting, Lisner also openly discussed the need to consider a vote of "no confidence" against Chief Lozano.  Lozano was made aware of Lisner's comments in this meeting in regards to his call for a vote of "no confidence" for Lozano.  On or about July 19, 2016, Lisner, in his capacity as POA Trustee and private citizen, sent an email to the POA membership expressing his concerns about the increase in violence towards police and referenced the City's troubling staffing problems within the police department.  All the aforementioned issues raised by Lisner in his capacity as an Association representative were matters of public concern in that they concerned unsafe staffing issues within the police department, the resulting violence towards members of the department as a result of the unsafe staffing issues, and the Chief's disturbing statements that suggested that he did not care if members of the community or his own police force hated him, as long as the City Council would support him.  As such, these communications by Lisner constituted speech that was protected by the First Amendment of the United States Constitution.

14.     Between July 25, 2016 and July 28, 2016, during contract negotiations between the City and the POA, Chief Lozano sent an email to members attempting to limit their use of "time off."  In his capacity as POA

1   Trustee and private citizen, Lisner replied by email to the Chief, advising him, as

2   a matter of public concern, that his directive was inappropriate and that it

3   violated the terms of the negotiated memorandum of agreement/contract between

4   the City and the POA, and that the POA would have to seek the advice of its

5   legal counsel in connection with the Chief's intentions to violate the terms of the

6   MOU.  Lisner's response and actions as Trustee of the POA and private citizen

7   resulted in Chief Lozano being forced to issue a retraction and apologize to the

8   POA membership for his inappropriate attempt to violate their contract.

9          15.    Just days after Lisner's engaging in protected Association activity

10  by advising the Chief that his intended actions regarding officer's use of "time

11  off" was inappropriate, and just weeks after Lisner had engaged in protected

12  Association activity by expressing his opinion about the Chief's inappropriate

13  remarks and his suggestion that the Association consider a vote of "no

14  confidence" towards Chief Lozano, Chief Lozano retaliated against Lisner for

15  engaging in this protected activity by (1) placing him on administrative leave on

16  August 9, 2016, and (2) instituting an unwarranted and retaliatory internal affairs

17  investigation against Lisner arising from comments Lisner allegedly made about

18  the ongoing SERMET program in the department and for actions Lisner took in

19  connection with his legitimate questioning of the validity and legality of a 5150

20  detention that had been made, just days earlier by members of the Huntington

21  Park police department and a social worker from an outside agency.  According

22  to Chief Lozano, Lisner was placed on administrative leave and subjected to an

23  internal affairs investigation for conduct that included Lisner's alleged

24  "harassment" of outside social worker Samantha Lopez.  Plaintiff is informed

25  and believes, and theron alleges, that Chief Lozano was well aware that no

26  harassment of Lopez took place (which was confirmed by the independent

27  investigation), but nevertheless Chief Lozano attempted to exert his power and

28  authority as Chief to persuade and/or coerce Lopez to make a false claim that

Lisner in fact harassed her.  Lisner learned of the Chief's potentially unlawful and unethical actions in connection with the private investigation conducted on his behalf in connection with his defense of the internal affairs investigation that was being conducted against him.

16.     Although Lisner did make some comments about issues he had with the SERMET program, at best his comments were minor issues that could have been, and should have been, informally resolved short of any disciplinary procedure being implemented against Lisner.  In fact, the plaintiff is informed and believes, and thereon alleges, that other members of the Huntington Park police department have been accused of engaging in conduct far worse (including but not limited to alleged criminal conduct by officers that resulted in arrest and prosecution) than that alleged against Lisner, which resulted in no discipline, or very minor disciplinary action being taken against them.  Instead, Chief Lozano kept Lisner on administrative leave for over sixteen months, advised Lisner of his intention to demote Lisner from Sergeant to Senior Officer, all of which, if implemented, would have caused Lisner a substantial loss of wages and benefits.

17.     Upon being placed on administrative leave, Lisner was warned by the City, at least twice in writing, that he was not to communicate in any manner with anyone at the department or the City about anything involved with or related to the investigation, and that if Lisner did so communicate with anyone, he was subject to termination of his employment with the City.

18.     On or about December 5, 2016, Lisner was interviewed by Huntington Park's Lt. Schennum and outside investigator Steve Rodig in connection with the internal affairs investigation that had been instituted by Chief Lozano against Lisner and reiterated his complaint that certain persons had perpetrated an unlawful detention in violation of California Welfare &

MURTAUGH TREGLIA STERN &
DEILY LLP

1   Institutions Code Section 5150 and the rights of the detainee under the US

2   Constitution.

3       19.    In or about January 2017, while still out on administrative leave,

4   Lisner was elected as President of the POA.  On March 2, 2017, in his capacity

5   as a private citizen and as POA President, Lisner sent a letter to Chief Lozano

6   advising him that civil service rules required that Lt. Schennum's 960

7   appointment violated Civil Service Rules/CalPERS regulations (as well as the

8   California Government Code) and that to avoid such violations Schennum's

9   appointment should be vacated and that his position should be filled by an acting

10  Lieutenant chosen from the eligibility list of tested and qualified members of the

11  POA.  Although the City attempted to initially justify Schennum's appointment,

12  it eventually complied with the POA's request made by Lisner.  Lt. Schennum

13  vacated his position and it was thereafter filled by an acting Lieutenant who was

14  an eligible and qualified member of the POA.

15      20.    Although the outside investigation had been completed for two

16  months, Chief Lozano did not notify Lisner of his intent to discipline him until

17  June 29, 2017 and kept Lisner on paid administrative leave during this time.  On

18  June 29, 2017, Chief Lozano served Lisner with a Notice of Proposed

19  Disciplinary Action ("Notice") which sought demotion of Lisner from Sergeant

20  to Senior Officer.  The Notice also contained findings added by Chief Lozano

21  that were not even included in the findings contained in the report prepared by

22  the outside investigator, and these additional findings included by the Chief were

23  based on documents which were time-barred by the Police Officer's Bill of

24  Rights (POBR) and referenced Lisner discussing staffing shortages as a union

25  representative.  The Chief's unusual personal involvement in "investigating" this

26  case was outside of Department Policy (340.5.2) as any request for further

27  investigation should have been directed to Department Staff and not been

28  handled by the ultimate decision maker, depriving Lisner of due process.

21.    After receipt of the Notice, Lisner's counsel engaged an investigator to prepare Lisner's defense for the upcoming Skelly hearing.  In the course of this investigation, evidence was uncovered that certain Lieutenants in the department, Sergeant Valle, and Chief Lozano himself, may have attempted to persuade and/or coerce social worker Samantha Lopez into lodging a false harassment complaint against Lisner.  As this was (1) potential evidence gathered for Lisner's defense of the disciplinary proceeding that the Chief brought against Lisner, and (2) was second hand/hearsay information, and (3) because Lisner had been admonished that any communications with anyone at the department or the City could lead to his termination, Lisner did not immediately disclose, and was not under any obligation to disclose, what his private investigator had learned about the Chief's potential unethical or criminal conduct in connection with the City's investigation of him.

22.    On September 7, 2017, Lisner's Skelly hearing took place.  Despite the Chief's personal involvement in some aspects of the internal affairs investigation, and despite the Chief's personal animus towards Lisner's Association activities, Lozano nevertheless appointed himself as the hearing officer for Lisner's Skelly hearing.  At the Skelly hearing, the Chief (as the hearing officer) was present along with the Huntington Park City Attorney.  When Lisner, through his counsel, advised the Chief and City Attorney during his opening statement that he may have evidence that Lozano and other members of the department attempted to coerce the key witness (Ms. Lopez) into asserting a false accusation against Lisner [which would constitute potential criminal conduct under California Penal Code § 135.5], Lozano asked Lisner's counsel if he "cared" to tell him where he received the information from.  Lisner's counsel told the Chief he was not going to do so at that time.  Lozano concedes he viewed Lisner's communication about the Chief's potential misconduct as an allegation of potential criminal conduct by the Chief.  The Chief simply

1    responded "OK" and did not advise Lisner or his counsel that he believed there

2    was any obligation on Lisner's part to provide him with that information, or that

3    Lisner was potentially in violation of any policy or procedure by having his

4    counsel refuse to provide the Chief with this information at the Skelly hearing.

5    Lisner did provide the Chief with the names of the witness allegedly coerced and

6    the alleged coercers, which provided the City with sufficient information to

7    conduct an investigation if the City desired to do so.  Additionally, during this

8    hearing Chief Lozano was advised that he was violating Lisner's Rights pursuant

9    to POBR based on statutory time limits, as well as the whistleblowers act due to

10   the allegations of false detention for 5150WIC, the Fourth Amendment, and

11   policy violations by Sergeant Valle, all of which the Department thereafter failed

12   and refused to investigate.

13        23.    Although the initial Skelly hearing was completed on September 7,

14   2017, on October 11, 2017, Chief Lozano served Lisner with a Notice of

15   Proposed Modified Disciplinary Action ("Modified Notice").  This Notice

16   accused Lisner of violating a series of department policies by failing to notify the

17   Chief of the Chief's own alleged misconduct, i.e. the Chief's attempt to coerce

18   Lopez into asserting a false harassment claim against Lisner.  This Modified

19   Notice substantially increased the proposed discipline against Lisner from a mere

20   demotion to termination of his employment.  Moreover, this Modified Notice

21   was issued by the Chief without his having conducted any investigation into the

22   potential allegation of unethical and criminal conduct communicated by Lisner at

23   the initial Skelly hearing.  After the initial Skelly hearing, Lisner communicated

24   with the department and advised him of his desire and willingness to

25   appropriately cooperate in any investigation into the allegations he had raised

26   against the Chief and others.  Despite Lisner's express effort to cooperate with

27   any effort made by the City to investigate the Chief's possible misconduct, the

28   City and the Chief failed and refused to conduct any investigation.  On December

MURIALGI TREGLIA STERN &
DEELY LLP          2245531                        - 10 -

7, 2017, a Skelly hearing was presided over by then acting City Manager Ricardo Reyes. Also present on behalf of the City was the City Attorney. At the outset of the Skelly hearing, Reyes advised Lisner and his counsel that he hadn't bothered to read the file as of the day of the Skelly hearing, and he thereafter asked no questions of Lisner. At this second Skelly hearing, Lisner communicated to both Reyes and the City Attorney all information he had regarding the Chief's purported unethical and unlawful conduct that Lisner had learned from his investigator. Following this second Skelly hearing, neither the City or the Chief undertook any investigation to determine the legitimacy of Lisner's prior allegations of misconduct by the Chief, and instead simply made the decision to terminate Lisner's employment. On January 8, 2018, the City notified Lisner of the Chief's decision to terminate him.

24.    Despite the City and the Chief advising Lisner—on January 8, 2018—that his conduct required the termination of Lisner's employment, Lozano has since given testimony, under oath, that he would have been in favor of Lisner's continued employment with the City police department provided Lisner would "not try to put a union label on everything" or if he did not "make issue of matters he doesn't agree with and attempt to put the weight of the union behind it." Chief Lozano has also admitted under oath that he has made comments to his command staff, just prior to disciplining Lisner, that Lisner had "essentially lost his sense of place within the rank structure of the police department as a supervisor through his involvement with the police union or behind the curtain of the union…" Since making the decision to terminate Lisner, Chief Lozano has also testified under oath that Lisner was an outstanding police officer when he was "able to separate department matters from union matters" and that when he was "able to apply himself as a supervisor to drive the best interest of the department in the interest of the department he can be very effective. By the same token, by putting a union label on something by the nature of his authority

as a supervisor he can be influential on the rank and file to go along with his views because along the way subordinates have to work for him."

## IV.

## FIRST CAUSE OF ACTION

**(Violation of U.S. Constitution, First and Fourteenth Amendments—Retaliation for Freedom of Speech and Freedom of Association Activities-Against All Defendants and DOES 1-10)**

25.     Plaintiff hereby incorporates as though set forth in full the allegations set forth in paragraphs 1 through 24.

26.     Defendants retaliated against Lisner as a direct result of Lisner's exercise of his constitutional rights to free speech and participation in labor, organization, social, and political activities as a member, agent, Trustee, and President of the Huntington Park Police Officers Association.  Lisner was also retaliated against for his speech which accused Chief Lozano of a matter of great public concern i.e. the Chief's potential unethical and/or criminal conduct in connection with the exercise of his duties as Huntington Park Chief of Police. Absent said protected speech and/or association with the police union, Lisner would not, and should not, have been terminated from his employment which constituted retaliation for the aforementioned constitutionally protected activities.

27.     The retaliation taken against Lisner evidences the fact that his speech and union activity was not required pursuant to his official duties.  His speech in regards to union matters fell outside Lisner's official job description. Plaintiff was not paid or compensated in any manner for his speech or association with the union, nor his membership in the police association a mandated part of Lisner's job duties.

28.     In doing the things alleged herein, defendants, and each of them, violated the rights of Plaintiff Lisner to free expression, association, and

MURTAUGH TREGLIA STERN &
DOYLE LLP

2245531

- 12 -

1  assembly under the First and Fourteenth Amendments to the United States
2  Constitution.

3       29.    The acts and omissions of defendants, and each of them, were done
4  by defendants under color of state law and as policy making authorities to which
5  defendant City delegated its governing powers in the subject matter areas in
6  which these policies were promulgated or decisions taken or customs and
7  practices followed.  The acts and omissions described above were taken by the
8  City's official policymakers as members charged with such responsibility.  It
9  was, or should have been, plainly obvious to any reasonable policy making
10 official of the City that the acts and omissions of defendants as alleged herein,
11 taken singularly or in conjunction, directly violated Lisner's clearly established
12 constitutional rights.

13      30.    In doing the things alleged herein, defendants acted with malicious
14 intent to violate Lisner's rights and/or at least conscious, reckless, and callous
15 disregard of Lisner's rights and to the injurious consequences likely to result
16 from a violation of said rights.  General and special damages are sought
17 according to proof.  Punitive damages are sought against Lozano and any other
18 individual defendant that may be named at time of trial according to proof.

19      31.    As a further proximate result of Defendants' conduct, Plaintiff has
20 retained an attorney to pursue his legal rights in connection with his claim, and,
21 upon prevailing in this lawsuit, shall be entitled to an award of reasonable
22 attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

MURTAUGH TREGLIA STERN &
DUFFY LLP

2245531

- 13 -

**COMPLAINT**

## V.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the defendants and that the court:

1.     Award Plaintiff Christopher Lisner compensatory and punitive damages for the injuries suffered in violation of federal law in an amount to be determined by a jury; and

2.     For attorneys' fees and costs as permitted by law according to proof;

3.     For prejudgment interest as permitted by law;

4.     For costs of suit incurred;

5.     For such other and further relief as the court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial for all issues so triable.

Dated:  October 16, 2019

MURTAUGH TREGLIA STERN & DEILY LLP

By: _____
Michael J. Grobaty
Attorneys for Plaintiff
CHRISTOPHER LISNER